UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14303-CIV-ROSENBERG/MAYNARD

SALVADOR RIOS, JR.,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner,
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DE 13 & 17)

This cause comes before the Court on the Parties' cross-motions for summary judgment (DE 13, 17). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Robin L. Rosenberg, United States District Judge, for a Report and Recommendation (DE 2). Upon consideration of the briefing and the record, and being otherwise fully advised in the premises, the undersigned **RECOMMENDS** that Plaintiff's Motion (DE 17) be **DENIED** and Defendant's Motion (DE 13) be **GRANTED.**

## BACKGROUND

This case involved a determination of Plaintiff Salvador Rios Jr. ("Plaintiff") application for social security income ("SSI"). Plaintiff applied for disability and disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act on December 28, 2015. In both applications, Plaintiff alleged disability beginning on December 22, 2015 due to cerebral thrombosis, stage 3 chronic kidney disease, diabetes, hypertension, cervical spine sclerosis, lumbar spine stenosis, herniated disks, bulging disk, atrial fibrillation,

osteoarthritis of the spine, and stroke/stage 3 kidney disease.  R. 334.  The applications were denied both initially and upon reconsideration. R. 106, 120, 144, 168.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on July 27, 2018. R. 54[1].  Plaintiff appeared, represented by counsel.  After the hearing, Plaintiff submitted additional evidence for the ALJ's consideration.  R. 429-31.

On October 31, 2018, the ALJ issued an unfavorable decision finding the Plaintiff was not disabled as defined by the Social Security Act. R. 45.  In his decision, the ALJ noted that Plaintiff was born on October 13, 1967 and was 48 years old on his alleged disability onset date. Plaintiff has a high school education. R. 69.   The ALJ determined that Plaintiff had several severe impairments since December 22, 2015, including, *inter alia*, degenerative disc disease of the spine, obesity, obstructive sleep apnea, a pulmonary embolism, and major depressive disorder.  R. 23. Based on those impairments, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, with some physical and mental limitations. R. 32. The ALJ determined that physically Plaintiff can occasionally climb ramp and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach in all directions with his right dominant upper extremity; and can frequently handle and finger with his right dominant upper extremity.  R. 31.  Plaintiff must avoid concentrated exposure to extreme heat, vibration and pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation, and can never be exposed to workplace hazards such as bladed or sharp instruments, moving machinery, moving mechanical parts, or unprotected heights. *Id*.  Mentally, the ALJ said Plaintiff can understand and remember simple instructions; can perform simple and repetitive tasks (but not a production rate pace or in quota driven work); can make simple work-related decisions; and, can

---

[1] References to "R. –" are to pages of the transcript of the administrative record.

respond appropriately to routine changes in work schedule, work tasks, employer policies, and employer procedures. *Id*. The ALJ noted that Plaintiff had a high school education and had previously worked as a security guard, pharmacy technician, and delivery truck driver. R. 59-60, 66-69. The ALJ found that Plaintiff could no longer perform that past work, but could hold the following positions: retail marker, furniture rental consultant, and tanning salon attendant. *Id*. at 44-45. Ultimately, the ALJ concluded that Plaintiff was not disabled. *Id*.

Plaintiff requested administrative review of the ALJ's decision. R. 289. The Appeals Council denied Plaintiff's request (R. 1), consequently rendering the ALJ's decision "final." 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's decision in this case. DE 17. Plaintiff has exhausted his administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

A district court court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *see also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a mere scintilla, but less than a preponderance") (quoting *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 F.

App'x 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id*.

A claimant must be "disabled" to be eligible for SSI. A claimant is disabled if he is unable to "engage in any substantial activity by reason of any medical determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A claimant bears the burden of proving that he is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The Social Security regulations require the ALJ to undertake a five-step, "sequential" evaluation process for determining whether a plaintiff is disabled. At step one, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the plaintiff is engaging in substantial gainful activity, then he or she is not disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). At step two, the ALJ must determine whether the plaintiff suffers from a medical determinable impairment, or a combination of medically determinable impairments that is "severe". 20 C.F.R.

§§404.1520(c), 416.920(c).  An impairment is "severe" within the meaning of the regulations if it significantly limits a plaintiff's ability to perform basic work activities. An impairment is "not severe," however, when medical or other evidence establish just slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect of a plaintiff's ability to work. *Id.* at §§404.1522, 416.922; Social Security Rulings ("SSRs") 85-28, 16-3p.  At step three, the ALJ must determine whether the plaintiff's impairment(s) meet or equal the criteria of an impairment list under 20 C.F.R. §§ 404, Subpart P, Appendix 1.  If so, the plaintiff is considered disabled; if not, then the analysis proceeds to step four.   Step four is a two-prong process where the ALJ must assess: (1) the plaintiff's residual functional capacity ("RFC") and (2) the plaintiff's ability to return to his or her past work.  The regulations define RFC as the most a plaintiff can still do despite the limitations caused by his or her impairments.  20 C.F.R. §404.1545(a). Once the ALJ determines the RFC, the ALJ must determine whether the plaintiff has the RFC to perform any past relevant work.  20 C.F.R. §§404.1520(f), 416.920(f).  If the plaintiff can return to his or her past relevant work, then the plaintiff is not disabled.  If the plaintiff cannot perform past relevant work, then a prima facie case of disability is established and the analysis proceeds to step five where the burden shifts to the Social Security Administration to show that there is other work in the national economy that the plaintiff can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The ALJ considers the plaintiff's RFC, age, education, and work experience to determine whether the plaintiff is capable of adjusting to other work.   If the plaintiff can make an adjustment to other work that exists in the national economy, then plaintiff is not disabled.  If not, plaintiff is considered disabled.  20 C.F.R. §§404.1520(g), 416.920(g).

**DECISION OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ in this case proceeded through the five-step analysis as follows:  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 22, 2015. R. 23.  At step two, the ALJ found that Plaintiff had the following severe combination of impairments: degenerative disc disease ("DDD") of the cervical and lumbar spine; obesity; diabetes mellitus ("DM"); the late effects of cerebrovascular disease' obstructive sleep apnea ("OSA"); a pulmonary embolism; hypertension ("HTN"); coronary artery disease ("CAD"); peripheral vascular disease ("PVD"); chronic kidney disease ("CKD"); a major depressive disorder ("MDD"); and an organic mental disorder. R. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. R. 26.  At step four, the ALJ found that Plaintiff has the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with additional limitations.  The claimant can lift or carry 20 pounds occasionally (up to one-third of the workday) and 10 pounds frequently (up to two-thirds of the workday), stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  The claimant can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach in all directions with his right dominant upper extremity; can frequently handle and finger with his right dominant upper extremity; must avoid concentrated exposure to weather-induced and artificially created extreme heat; must avoid concentrated exposure to vibration, as well as pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation; and, can never be exposed to workplace hazards, such as bladed or sharp instruments, moving machinery, moving mechanical parts, or unprotected heights. Additionally, the claimant can understand and remember simple instructions; can perform simple and repetitive tasks, but not a production rate pace or in quota driven work; can make simple work-related decisions; and, can respond appropriately to routine changes in work schedule, work tasks, employer policies, and employer procedures.

R. 31.  The ALJ determined that Plaintiff lacked the ability to perform his past relevant work and accordingly moved to step five.  At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  These jobs include: retail marker (DOT #209.587-034), with approximately 67,000 jobs in the national economy; furniture rental consultant (DOT #295.357-018), with approximately 40,000 jobs in the national economy; and tanning salon attendant (DOT #359.567-014), with approximately 19,000 jobs in the national economy. R. 45.  Accordingly, the ALJ found that Plaintiff was not disabled at any time within the meaning of the Social Security Act. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because (1) the ALJ failed to properly consider the medical opinion of state agency examiner Sally A. Stader, Ph.D; (2) the ALJ's finding that Plaintiff could perform light work was not supported by substantial evidence; and (3) the ALJ's finding that Plaintiff could perform other work in the national economy was not supported by substantial evidence. DE 17.  The Defendant's Motion opposes all of Plaintiff's arguments. DE 18.  The undersigned addresses each argument below.

### A.  Whether the ALJ Failed to Properly Consider the Medical Opinion of Dr. Stader

Plaintiff asserts that the ALJ erred in evaluating the opinion of Dr. Sally A. Stader, Ph.D.  Dr. Stader evaluated Plaintiff on August 8, 2016 at the request of the Florida Department of Health, Division of Disability Determinations. R. 994. During that visit, Dr. Stader reviewed Plaintiff's medical records regarding physical ailments, but noted that no mental health records were provided.  *Id*. After interviewing Plaintiff, Dr. Stader opined that Plaintiff's mental health symptoms appeared to be moderately to severely impacting his daily activities, vocational

performance and interpersonal interactions. *Id*. at 997. ALJ Ferguson accorded "little weight" to this opinion.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ is "required to state with particularity the weight [given to] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Id*. Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; and (3) the opinion was conclusory or inconsistent with the physician's own medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ may reject the opinion of a treating physician with good cause, but "must clearly articulate [the] reasons" for doing so. *Winschel*, 631 F.3d at 1179.

Dr. Stader is not a treating physician, however. She examined Plaintiff one time at the request of the state disability agency. R. 994. The opinion of a one-time examiner is not entitled to any deference or special consideration. *See* 20 C.F.R. §§404.1527(c)(1), (c)(2), 416.927(c)(1), (c)(2); *Eyre v. Comm'r Soc. Sec. Admin*, 586 F. App'x 521, 523 (11th Cir. 2014);*Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  An ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).  An ALJ may also reject any medical opinion that is conclusory, unsupported by objective medical evidence, or inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

The ALJ discounted Dr. Stader's opinion because it was inconsistent with the record as a whole.  The record contains numerous examples of medical professionals observing Plaintiff to have fairly normal and acceptable social interaction. In August 2016, Dr. K. Ragsdale opined that Plaintiff had an acceptable level of social interactions but could perform only simple routine tasks. On April 27, 2016, Dr. R. Arumugam noted that Plaintiff was oriented, able to follow simple commands, and showed no signs of mental incompetence.  R. 889.  On October 25, 2016, Plaintiff's treating physician, Dr. M. Beltre, indicated that Plaintiff was alert, oriented, cooperative, had good memory, insight and judgment, and exhibited no mood swings and no psychotic features. R. 1136.  On April 19, 2018, Dr. Beltre similarly noted that Plaintiff was alert, oriented, cooperative, in no acute distress, exhibited no mood swings or psychotic features, and demonstrated a good memory, good insight and judgment. R. 1292-93.  Dr. R. Torres noted that Plaintiff was alert, oriented, in an appropriate mood, in no distress, and denied having hallucinations or delusions when he saw Plaintiff on July 25, 2016, July 17, 2017 and May 9, 2018. R. 993, 1393, 1389. On March 22, 2018, Dr. D. Patel remarked that Plaintiff was in no acute distress, denied having depression, panic attacks, compulsions, hyperactivity, obsessive thoughts, changes in sleep pattern or suicidal thoughts/attempts.  R. 1230. Dr. A.  Torres noted that Plaintiff was active, alert, oriented, in a normal mood and with a normal affect.  Records from Plaintiff's

emergency room visits further show Plaintiff as having normal and adequate social interactions. On January 9, 2017, the ER record at Florida Hospital noted that Plaintiff was alert, oriented, in no acute distress, had normal speech, and denied having anxiety or depression.  R. 1185-89.  On June 25, 2018, Plaintiff was alert, oriented, cooperative, and able to answer questions appropriately, despite having been Baker acted due to overdosing on medication.  Ex. 47F. Although Plaintiff exhibited a flat affect and mood, he denied having anxiety, depression, substance abuse or suicidal ideation. R. 1475, 1477.

Not only is Dr. Stader's opinion inconsistent with the weight of this evidence, it also is inconsistent with Dr. Stader's own observations during her evaluation of Plaintiff.  Dr. Stader indicated that during the interview Plaintiff was alert, oriented, of average overall intelligence, had adequate grooming and hygiene, maintained adequate eye contact, and exhibited a positive attitude.  Dr. Stader said Plaintiff showed adequate cooperation and effort, adequate social skills, logical, relevant, coherent speech content, an unremarkable speech rate, adequate receptive language, logical, coherent, goal-directed thought processes, a good immediate memory, only mildly impaired recent memory, an adequate remote memory, adequate attention and concentration, adequate abstract reasoning, adequate judgment, age-appropriate, unremarkable thought form and content, no hallucinations or delusions, and no homicidal ideation.  R. 996.  Dr. Stader noted that Plaintiff drove to the appointment by himself, was able to answer all Dr. Stader's questions (albeit with some difficulty remembering specific dates and details), was mostly able to bathe, dress and toilet independently (but needed some assistance dressing), was able to prepare basic foods for himself,  reported no symptoms of panic, and—in Dr. Stader's view—had adequate abstract reasoning, judgment related to self-care, and social problem solving.    Given these observations, it is difficult to credit Dr. Stader's ultimate conclusion that Plaintiff's mental health

symptoms were moderately to severely impacting his daily activities, vocational performance and social interactions.

The ALJ's decision to accord little weigh to the medical opinion of Dr. Stader is supported by substantial evidence.  The ALJ adequately addressed Plaintiff's mental limitations in the RFC by noting that Plaintiff can understand and remember only simple instructions; can perform only simple and repetitive tasks and can make only simple work-related decisions.  Substantial evidence supports the ALJ's determination that Plaintiff has only mild limitations with respect to interacting with others.

Plaintiff also complains that the ALJ inaccurately characterized Dr. Stader as having concluded that Plaintiff was mentally unable to perform competitive work.  The ALJ rejected that opinion because conclusions about whether a claimant is "disabled" or "unable to work" are reserved to the Commissioner. R. 42.  This Court has reviewed Dr. Stader's report and does not read it in the same way as the ALJ, though it does state that Plaintiff's mental symptoms moderately to severely impact Plaintiff's vocational performance.  At any rate, error (if any) by the ALJ on this point is harmless because the ALJ's other reasons for discounting Dr. Stader's opinion are well-supported. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010) ("In a Social Security case, erroneous factual statements by the ALJ may constitute harmless error if the ALJ applies the proper legal standard."); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The ALJ clearly articulated his reasons for discounting Dr. Stader's opinion and substantial evidence supports his decision to do so.

**B.  Whether the ALJ's RFC Finding of Light Work is Supported by Substantial Evidence**

Next, Plaintiff contends the ALJ's conclusion that Plaintiff was limited to light work was not supported by substantial evidence.  Plaintiff points to physical therapy records from December

2017 showing problems with Plaintiff's range of motion in the cervical and lumbar spine, muscular strength, tenderness and pain. Plaintiff also emphasizes Dr. Torres' instruction to Plaintiff to use a walker. Plaintiff says the ALJ ignored this evidence in his decision and the failure to consider it warrants remand.

Plaintiff's arguments in this regard are unavailing. Substantial evidence supports the ALJ's light RFC finding. The ALJ considered and discussed Plaintiff's full medical record relating to cervical and lumber degenerative disc disease between 2015 and 2018. R. 32-35. The ALJ reviewed treatment notes and records from that time period showing that Plaintiff sometimes walked with a shuffling or limping gait (R. 759, 996); demonstrated painful and restricted movements (R. 1136); experienced back strain, lumbar spinous tenderness and generalized weakness (R. 1009, 1292, 1296-97, 1321); had partial right hemiparesis (one-sided weakness) (R. 985); and had limited ranges of motion of his joints, bones, muscles and cervical spine (R. 1236, 1250). Notwithstanding those findings, the ALJ also reviewed treatment records showing that during the same time period Plaintiff often walked with a normal gait without assistive devices (R. 1193, 1202, 1293); was able to mount an examination table without assistance (R. 887); exhibited normal ranges of musculoskeletal motion; had full motor strength in all extremities; had normal muscle tone, normal reflexes, normal sensations and normal coordination (R. 1436); had no significant musculoskeletal deformity or swelling (R. 1230); experienced no focal neurological, cranial nerve, or motor deficits (R. 1389-90, 1393); and exhibited no involuntary movements, fine motor tremors, shakes, or significant problems with motor functioning. A spinal x-ray during that time frame revealed only minimal degenerative change with no acute findings. R. 1301. The ALJ further considered Plaintiff's testimony, his wife's testimony, Plaintiff's reported activities of daily living and the relatively conservative treatments recommended by Plaintiff's physicians.

After considering and weighing the medical record as a whole, the ALJ afforded great weight to the medical opinion of Dr. P.S. Krishnamurthy, who concluded that Plaintiff could only perform light work, with some postural and environmental limitations.  Conversely, the ALJ did not afford great weight to Dr. Arumugam, who opined that Plaintiff had no evidence of functional impairments.  The ALJ said Dr. Arumugam's opinion was inconsistent with the medical evidence, which showed that Plaintiff did indeed have some pain and functional impairments relating to degenerative disc disease, though not to the degree Plaintiff and his wife claimed.  This shows that the ALJ considered all of the evidence – including the records of pain and range of motion issues that Plaintiff now points to – in finding that Plaintiff should be limited to light work and in imposing further additional conditions.

Plaintiff's complaint that the ALJ erred by not specifically mentioning Dr. Torres' recommendation of a walker or other particular findings misapprehends the ALJ's responsibility and the role of this Court.  An ALJ is not required to refer specifically to every piece of evidence in the record, but is required to provide sufficient detail to allow a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  The ALJ has done that in this case.  Further, this Court's role is not to re-weigh the evidence.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination[], her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] … even if the evidence preponderates against' the decision") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (footnote omitted)); *see also Forrester v. Comm'r of Soc. Sec.,* 455 F. App'x 899, 901 (11th Cir. 2012) ("We do not reweigh the

evidence or substitute our own judgment for that of the agency. If the [agency]'s decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.") (citations and internal quotations omitted). The ALJ's determination that Plaintiff had the residual functional capacity to perform light work with conditions is supported by substantial evidence and should therefore be upheld.

### C.  Whether the ALJ's Finding that Plaintiff Could Perform Other Work in the National Economy is Supported by Substantial Evidence

Under the Social Security Act's regulations, if the ALJ finds that the plaintiff is unable to perform his past relevant work, the ALJ must show the existence of other jobs in the national economy that the plaintiff can perform. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). This finding must be supported by substantial evidence. *Id*. In making this determination, the ALJ may consider both the information contained in the Dictionary of Occupational Titles ("DOT") and testimony from a vocational expert. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Wilson*, 284 F.3d at 1227.

In this case, the ALJ adopted an RFC finding that included a limitation to "occasional stooping," but did not include a stooping limitation in the hypothetical questions posed to the vocational expert.  In fact, at one point the vocational expert specifically asked the ALJ whether the hypothetical included a stooping limitation and the ALJ responded that it did not.[2]  Since the

---

[2]  None of the hypothetical questions posed to the VE completely matched the ALJ's RFC determination. During the administrative hearing, the VE was asked whether there were any jobs in the national economy for someone with the Plaintiff's impairments, including the limitations that he can only engage in "occasional balancing, kneeling, crouching, and crawling."  Tr. 88.  The VE asked for clarification: "[s]o occasional balance, stooping and kneeling?" *Id.* (emphasis added).  To which the ALJ responded, "[n]o, just occasional balance, kneeling, crouching and crawling." *Id.*  The ALJ omitted stooping from the analysis.  In response to that hypothetical, the VE testified that Plaintiff could perform jobs as a marker, a furniture rental consultant, and a tanning salon attendant. R. 89.

ALJ omitted the stooping limitation in questioning the vocational expert, Plaintiff argues that the expert's testimony is not substantial evidence of Plaintiff's ability to perform jobs existing in the national economy.

This Court finds, however, that the ALJ's failure to include a stooping limitation is harmless error since two of the three jobs identified by the VE require only occasional stooping or do not require stooping at all according to the Dictionary of Occupational Titles (DOT).  *See* DOT § 209.587-034, 1991 WL 671802 (describing requirements of retail marker job and indicating that stooping activity is not required), *Wright-Adside v. Colvin*, 2013 WL 3070873, at *6 (M.D. Fla. June 17, 2013) (noting that a marker job would not require the plaintiff to perform any bending or stooping); DOT § 295.357-018, 1991 WL 672589 (describing requirements of furniture consultant job and indicating that only occasional stooping is required), *Campbell v. Comm'r of Soc. Sec.*, 2019 WL 6463983, at *1 (M.D. Fla. Dec. 2, 2019) (finding that the plaintiff, who was limited to occasional stooping, could perform the job of furniture rental [consultant]).  In addition, Plaintiff attaches a SkillTRAN "Detailed Job Specialty Report" that indicates that the position of tanning salon attendant also requires only occasional stooping. [3]  Thus, Plaintiff can still perform at least two, if not all three, of the jobs cited by the vocational expert even with the limitation of occasional stooping.  Since he can still perform jobs existing in the national economy, the error is harmless. *See Gunderson v. Comm'r of Soc. Sec.*, 2017 WL 1045506, at *9 (M.D. Fla. Mar. 20, 2017) (finding the ALJ's failure to include in the hypothetical question to the VE the more restriction

---

[3] Plaintiff attaches a SkillTRAN "Detailed Job Specialty Report" for each of the three jobs the ALJ found Plaintiff had the RFC to perform.  These reports list the U.S. Dept of Labor, Dictionary of Occupational Titles Fourth Edition, Revised (1991) as its data source; and the job code for each job matches the job code of their DOT counterparts.  *See* DE 17-1, 17-2, 17-3. Without opining on SkillTRAN reliability or lack thereof, the Court notes that the job descriptions indicate that at least two of the jobs can be performed by a person with the Plaintiff's RFC.  Specifically, the furniture rental consultant position and the tanning salon attendant positions explicitly state that they do not require more than occasional stooping, which is consistent with Plaintiff's RFC and supports this Court's conclusion that any error in omitting a stooping limitation from the hypotheticals was harmless error.  *See* DE 17-2, 17-3.

limitations the ALJ found in the RFC harmless where the DOT classification of the job did not require those activities);  *cf. Rojas v. Comm'r of Soc. Sec.*, 2017 WL 2130078, at *6 (M.D. Fla. May 17, 2017) (not finding harmless error where it was unclear from the record whether the jobs listed by the ALJ would still be applicable if the hypothetical questions had included all of the plaintiff's limitations).

This Court is not persuaded by Plaintiff's arguments to the contrary.  Plaintiff's claim that the vocational expert's request for clarification about stooping shows that a stooping limitation would have changed the expert's testimony is without merit since the jobs the expert selected require at most occasional stooping, which Plaintiff can do.  In addition, there is no apparent conflict between the VE's testimony and the DOT with respect to the jobs cited by the vocational expert, therefore *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) is not applicable.  In short, while the ALJ inadvertently may have omitted the stooping limitation from the hypothetical questions, Plaintiff can still perform the jobs identified by the vocational expert. Consequently, remand would serve no purpose here and Plaintiff's motion should be denied. *See Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981) (concluding that remand for the ALJ to make express findings would be a "wasteful corrective exercise" where no further findings would have altered the ALJ's RFC determination).

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Defendant's Motion for Summary Judgement (DE 13) be **GRANTED**, and Plaintiff's Motion for Summary Judgment (DE 17) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States

District Judge assigned to this case. If a party does not intend to object to this Report and Recommendation, that party shall file a notice of such within five (5) days of the date of this Report and Recommendation.

      **DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 28th day of August, 2020.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE